# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1871

_____

United States of America,      *
     *
     Plaintiff–Appellee,      *
     *    Appeal from the United States
     v.      *    District Court for the Western
     *    District of Missouri
Michael Leon Bradley,      *
     *
     Defendant–Appellant.      *

_____

Submitted: September 14, 2000

Filed: December 7, 2000

_____

Before WOLLMAN, Chief Judge, MURPHY, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Michael Leon Bradley was arrested and charged with possession of methamphetamine. Bradley moved to suppress the results of two searches to which he had originally consented, on the grounds that his consent was involuntary. The district court[1] denied his motion. Bradley subsequently entered into a plea agreement and was

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

sentenced. He now appeals the denial of his motion to suppress. For the reasons below, we affirm.

I

Officer Aaron Richardson of the Jasper County Sheriff's department pulled Bradley over for changing lanes without signaling. He noted that Bradley was extremely nervous, and was sweating and stammering. When Richardson ran a check on Bradley's license, he saw that Bradley was on parole for a drug offense. He also noted that Bradley was the same person at whose house Richardson had been planning to do a "knock and talk," based on tips from a confidential informant concerning drug activity at the address.

During the course of the stop, Richardson asked Bradley for permission to do a pat-down search for weapons. Bradley consented. Richardson noted two large lumps in Bradley's pants pockets, but realized they were not weapons. When Richardson asked Bradley what the lumps were, Bradley told him that they were money, approximately $2000. When asked, Bradley agreed to count the money, and pulled out a roll of bills and a change purse. Bradley then opened the purse to take out more money, and Richardson saw that it contained a zip-loc baggie containing white powder. Richardson read Bradley his Miranda rights and placed him under arrest. The white substance field-tested positive for methamphetamine.

Richardson took Bradley to the Sheriff's Department. During the ride, Bradley indicated his willingness to cooperate with the police. Richardson asked for permission to search Bradley's residence, but Bradley refused. Once at the station, Richardson claims, Bradley asked to speak to him. They talked from 10:45 p.m. to 1:20 a.m., during which time Bradley signed a form giving Richardson consent to search his house. Bradley and Richardson agree that the talk was long because they were discussing whether Bradley could provide the police with useful information.

-2-

Bradley and Richardson give differing stories about the signing of the consent form. Bradley claims that during the course of their talk Richardson again asked for permission to search Bradley's home, but Bradley initially refused. He claims that Richardson then told him that if he had to get a warrant to search Bradley's house, he would also charge Bradley's son based on the results of the search. Bradley's 22-year-old son lives with him and has no prior record. Bradley then signed the consent form, because he wanted to protect his son. Richardson denies ever threatening to arrest Bradley's son, and states that Bradley himself raised the subject of his son.

A search of Bradley's house revealed currency, drug paraphernalia, and stolen weapons. Bradley was indicted and charged on three counts pursuant to 18 U.S.C. § 922 (g) and (j). He filed a motion to suppress the results of both the search of his person and the search of his home, based on involuntary consent. After an evidentiary hearing, the magistrate judge[2] issued a Report and Recommendation in which he recommended denying the motion. The district court adopted the Report and Recommendation.

Bradley claims that the district court's denial of his motion to suppress was incorrect for two reasons: (1) when he was asked to remove the money from his pocket, the search of his person went beyond the scope of the Terry-style search for weapons to which he originally consented; and (2) his consent to the search of his house was not voluntary since he consented only when threatened with the arrest of his son. We hold that Bradley's complaint about the search of his person has been waived for failure to raise it in the court below, and that his consent to the search of his home was voluntary.

---

[2]The Honorable James C. England, United States Magistrate Judge for the Western District of Missouri.

II

We need not determine if asking Bradley to remove the money in his pockets extended the search beyond the scope of his consent, as he has waived this issue. In his motion to suppress, Bradley did generally object that the entire search of his person was without voluntary consent. He did not, however, make the specific argument that asking him to take the money and change purse out of his pocket went beyond the scope of his consent to be frisked for weapons. Thus, we hold that this issue has been waived, see United States v. Elliott, 89 F.3d 1360, 1367 (8th Cir. 1996), and affirm the district court's ruling on this alternative ground.

III

We must next determine if Bradley gave voluntary consent for the search of his home. "We review a district court's finding of consent to search for clear error." United States v. Black, 88 F.3d 678, 680 (8th Cir. 1996). Police may conduct a search of someone's home or person even without a warrant or probable cause if that person voluntarily consents to the search. See United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990). Whether or not the consent was voluntary must be established by examining the totality of the circumstances, including "'both the characteristics of the accused and the details of the interrogation.'" Id. at 380-81 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)). Consent is voluntary if it was "'the product of an essentially free and unconstrained choice by its maker,' [citation omitted], rather than 'the product of duress or coercion, express or implied.'" Id. at 380 (quoting Schneckloth, 412 U.S. at 225, 227).

The Eighth Circuit has detailed the factors, relating to both persons and environments, to consider when determining if consent was voluntary. "Characteristics of persons giving consent" which may be relevant to the question include:

(1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their Miranda rights; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system.

Id. at 381 (internal citations omitted). Characteristics of "the environment in which consent was given" include:

whether the person who consented (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred.

Id. (internal citations omitted). The factors should not be applied mechanically, id., and no single factor is dispositive or controlling. United States v. Ponce, 8 F.3d 989, 997 (5th Cir. 1993).

Considering this consent to search in light of the Chaidez factors, it is important to note that Bradley had been arrested on a prior occasion and presumably knew his legal rights. Additionally, by the time of his conversation with Richardson, Bradley had received his Miranda warnings. The length of time he was talking with Richardson is not a factor; the district court noted that there was no indication from Bradley's testimony that the time factor was so prolonged as to be coercive. The district court also noted that Richardson and Bradley agree that the time was spent in attempting to determine how Bradley could cooperate. The district court found a lack of evidence showing that Bradley was under the influence of any substance which would affect his ability to give voluntary consent, and that the police did not promise him anything in exchange for his consent. None of these findings are clearly erroneous.

Bradley argues that he only gave consent to the search of his home because Officer Richardson had threatened to arrest Bradley's son if Bradley did not consent. Richardson denies threatening Bradley's son; rather, he testified that Bradley brought up the issue of his son. The district court noted that while this was a close question, under the totality of the circumstances, the government had met its burden of proving consent by a preponderance of the evidence. The court stated that Bradley "did not convince the court that his will was overborne and that he did not voluntarily consent to the search. . . . While concern for his son may have been his motivating factor for doing so, the testimony did not establish that he acted under duress or undue pressure." Report and Recommendation of United States Magistrate, at 9-10. In sum, there is no reason to believe this finding is clearly erroneous.

IV

For the reasons stated above, the order of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.